**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kurt D.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David Venturella, *Acting Director, Immigration and Customs Enforcement*; David Eastwood, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; Joel Brott, *Sherriff, Sherburne County*,

Respondents.

Case No. 26-cv-3320 (JWB/DJF)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Kurt D.'s[1] *Petition for a Writ of Habeas Corpus* (ECF No. 1) ("Petition"). Kurt seeks an order for his immediate release from immigration detention. For the reasons stated below, the Court recommends the Petition be granted.

## BACKGROUND

### I. Petitioner's Arrest and Detention

Kurt is a citizen of Jamaica who was admitted as a lawful permanent resident of the United States in July 2008. (ECF No. 1 at 2; ECF No. 8 at 1.) Since his admission, Kurt has been charged with, and convicted of, multiple criminal offenses in North Dakota state court. On May 15, 2023, Kurt pled guilty to one count of Menacing and one count of Violation of an Order Prohibiting Contact. (ECF No. 7 at 1-2; ECF No. 8-7.) On July 28, 2025, Kurt pled guilty to one count of Domestic Violence – Substantial Bodily Injury and one count of Menacing – Domestic Violence.

---

[1] This District has adopted a policy of using only the first name and last initial of any

(ECF No. 7 at 1; ECF No. 8-8.) Respondents further allege Kurt was arrested for terrorizing on March 13, 2026. (*See* ECF No. 7 at 2.)

On May 12, 2026, Respondents issued an 1-200 Warrant for Kurt's arrest. (ECF No. 8-2.) The I-200 Warrant states that there is "probable cause to believe that [Kurt] is removable from the United States" based on (1.) "the execution of a charging document to initiate removal proceedings against [him]" and (2.) "statements made voluntarily by [Kurt] to an immigration officer and/or other reliable evidence that affirmatively indicate [he] either lacks immigration status or notwithstanding such status is removable under U.S. law." (*Id.*) On May 13, 2026, upon Kurt's arrival at the North Dakota Probation Office in Fargo for a regularly scheduled check-in, Immigration and Customs Enforcement ("ICE") agents executed the I-200 Warrant and arrested Kurt. (ECF No. 1 at 2; ECF No. 8-2.) The ICE agents then transported Kurt to an ICE processing center and served him with a Notice to Appear ("NTA"), signed May 13, 2026, which charges him as removable from the United States under the Immigration and Nationality Act ("INA") §§ 237(a)(2)(A)(ii), 237(a)(2)(E)(i), and 237(a)(2)(E)(ii). (ECF No. 1 at 2; ECF No. 8-1.) ICE officials denied Kurt release from custody and he elected to have an immigration judge review the custody determination. (ECF No. 7 at 2; ECF No. 8-3.) On June 11, 2026, an immigration judge denied Kurt's request for release on the grounds that detention was mandatory and he failed to establish he was not a danger to the community. (ECF No. 7 at 2; ECF No. 8-5.) Kurt is currently detained at the Sherburne County Jail in Elk River, Minnesota. (ECF No. 1 at 2.)

---

nongovernmental parties in orders in immigration matters.

## II. Relief Requested

The Petition asks the Court to order Respondents to release Kurt immediately. (ECF No. 1 at 5.) The Petition further requests an order enjoining Respondents from re-detaining Kurt pursuant to 8 U.S.C. § 1226. (*Id.*) The Petition asserts claims based on alleged violations of Fifth Amendment due process and Fourth Amendment warrantless and unreasonable search and seizure. (*Id.* at 2.)

## DISCUSSION

## I. Legal Standards

The federal habeas statute empowers federal courts to release civilly-detained individuals such as Kurt when that detention violates the Constitution or federal law. 28 U.S.C. § 2241; *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025). It is well-established that federal regulations are federal law. *See Resolution Trust Corp. v. Home Sav. of America*, 946 F.2d 93, 96 (8th Cir. 1991); *Velocity Express Corp. v. Bayview Capital Partners, LP*, No. 02-cv-521 (RHK/AJB), 2002 WL 980502, at *2 n.3 (D. Minn. May 9, 2002). It therefore follows that a habeas petitioner may be released when his civil detention arises from a violation of federal regulations. *See In re United States*, 197 F.3d 310, 315 (8th Cir. 1999) (citing *United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) ("[T]he *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights[.]") (quotation omitted).

## II. Section 1226 Warrant Requirement

Respondents contend Kurt must be detained under 8 U.S.C. § 1226(c), which provides for the mandatory detention of noncitizens convicted of certain enumerated criminal offenses. Kurt's Petition asserts a variety of grounds for relief, but his challenge is largely based on his contentions that: (1.) he is not subject to mandatory detention under Section 1226(c) because his state court

convictions do not meet the requirements for mandatory detention under that statute; and (2.) his arrest and detention are invalid because the I-200 Warrant supporting his arrest was issued prior to the NTA. (ECF No. 13-1 at 2-5.) The second issue is dispositive.

When a foreign national is suspected of being removable, an immigration official issues an NTA. *Arizona v. United States*, 567 U.S. 387, 407 (2012) (citing 8 U.S.C. § 1229(a)); *Vasquez Perez v. Decker*, No. 18-cv-10683 (AJN), 2019 WL 4784950, at *1 (S.D.N.Y. Sept. 30, 2019) (noting that an NTA is the charging document in immigration removal proceedings). At the time of an NTA's issuance (or at any time thereafter until removal proceedings are completed), the Attorney General, through specified officials, may issue a Form I-200 warrant of arrest that establishes authority for ICE agents to arrest the foreign national named in the NTA. *Arizona*, 567 U.S. at 407 (citing 8 U.S.C. § 1226(a)); 8 C.F.R. §§ 236.1(b), 1236.1(b).

Section 1226(a) provides that, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 C.F.R. §§ 236.1(b) and 1236.1(b) provide further guidance regarding the interplay between an NTA and an I-200 Warrant:

> (1) In general. *At the time of issuance* of the notice to appear*, or at any time thereafter* and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of 8 CFR chapter I and may be served only by those immigration officers listed in § 287.5(e)(3) of 8 CFR chapter I.
>
> (2) If, after the issuance of a warrant of arrest, a determination is made not to serve it, any officer authorized to issue such warrant may authorize its cancellation.

(emphasis added.) A plain reading of 8 C.F.R. §§ 236.1(b) and 1236.1(b) provides that, to effectuate a detention under Section 1226, the Attorney General must *first* issue an NTA, and then, either subsequently or concurrently, issue an I-200 Warrant to arrest the noncitizen charged as removable.

Though the parties disagree as to whether Kurt's detention is discretionary pursuant to Section 1226(a) or mandatory pursuant to Section 1226(c), there is no dispute that an I-200 Warrant was required to arrest and detain him. (*See* ECF No. 13-1 at 3-4; ECF No. 7 at 9.)

Respondents argue the issuance of the NTA need not precede the I-200 Warrant and arrest. They contend that 8 C.F.R. § 236.1(b) does not always control service of the I-200 Warrant and that its inclusion of the phrase "In general" indicates that an NTA is not always a prerequisite to arrest. (ECF No. 7 at 9-10.) But Respondents cite to no in-circuit opinion to support their position, and courts in this District have consistently held that the NTA must precede, or, at a minimum, be issued at the same time as, the I-200 Warrant. *See Victor P. v. Blanche*, No. 26-cv-3217 (JMB/SGE), 2026 WL 2110732, at *3 (D. Minn. July 22, 2026) (holding I-200 Warrant invalid and releasing petitioner on the basis that the NTA was generated *after* the I-200 Warrant) ("DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA."); *Jouquin C.S. v. Bondi*, No. 26-cv-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding petitioner's detention under Section 1226(a) was unlawful because I-200 Warrant was invalid in that it was issued prior to issuance of NTA); *Pedro D.C. v. Blanche*, No. 26-cv-2450 (KMM/DLM), 2026 WL 1759444, at *1 (D. Minn. June 18, 2026) (same); *Hegeh K. v. Blanche*, No. 26-cv-3087 (JRT/ECW), ECF No. 19 at 2-3 (D. Minn. Aug. 4, 2026) (ordering release of petitioner detained under Section 1226(c) because I-200 Warrant was issued prior to NTA). This Court agrees with the foregoing precedents and concludes the issuance of the NTA must precede the I-200 Warrant and arrest.

Here, the record establishes that immigration agents issued and executed the I-200 Warrant before officials issued the NTA. The I-200 Warrant was issued on May 12, 2026. (*See* ECF No. 8-2

(I-200 Warrant); ECF No. 8 at 1 (Respondents' declaration).)[2] Respondents executed the I-200 Warrant and arrested Kurt on May 13, the following day. (ECF No. 8-2; ECF No. 8 at 1-2.) Importantly, the NTA was not issued until May 13, 2026. (ECF No. 8-1 at 1.) Moreover, while the precise timeline is unclear, the record suggests the NTA was issued after officials had already used the I-200 Warrant to arrest Kurt earlier that same day. (*See* ECF No. 8 at 2.) This is consistent with his account that the NTA was only issued and served after he was transported to the ICE processing center following his arrest. (ECF No. 1 at 2.) Respondents argue the NTA was effectively issued in concurrence with the I-200 Warrant, because it was issued on the same day that they executed the I-200 Warrant: May 13, 2026. (ECF No. 7 at 13.) But an I-200 Warrant is invalid if issued before the NTA, even if issued on the same day. *See Victor P.*, 2026 WL at *3. Here, it is clear the I-200 Warrant was based on a falsehood, namely, that immigration officials had executed a charging document to initiate removal proceedings against Kurt, when no such document had been issued at that time. For these reasons, the I-200 Warrant used to arrest Kurt was invalid.

Respondents do not dispute that a valid I-200 Warrant is a condition precedent to lawful detention under Section 1226. Release is the typical remedy for unlawful executive detention. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because Respondents did not arrest Kurt subject to a valid warrant, his detention is unlawful, and release is the appropriate remedy. *See Victor P.*, 2026 WL at *4 (ordering noncitizen's immediate release based on I-200 Warrant preceding NTA); *Jouquin*, 2026 WL at *3 (same); *Pedro D.C.*, 2026 WL at *2 (same); *Hegeh K.*, ECF No. 19 at 2-3 (same). The Court therefore recommends the Petition be granted and Kurt be released immediately.[3]

---

[2] The I-200 Warrant was predicated in part on "the execution of a charging document to initiate removal proceedings against the subject". (ECF No. 8-2.) But this cannot have been possible, because the I-200 Warrant was issued on May 12, 2026, and the charging document (the NTA) was not issued until May 13, 2026.

[3] Because the I-200 Warrant / NTA issue is dispositive of the Petition, the Court does not

## III. Exhaustion

Respondents urge the Court to deny the Petition because Kurt failed to exhaust his administrative remedies by failing to appeal the immigration judge's order to the Board of Immigration Appeals ("BIA"). However, "there is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention in federal court." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). The exhaustion requirement for Section 2241 petitions is judicially created, not statutorily mandated, so when considering it, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Kurt's detention was and remains unlawful from the moment of his arrest on an invalid warrant. Requiring him to wait in detention for an undetermined amount of time for an unclear result from the BIA is counter to due process. The Court rejects Respondents' exhaustion argument on this ground.

## IV. Objections

Given the expedited nature of these proceedings, the Court is altering the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **August 11, 2026**. Kurt may file a response to any objections on or before **August 13, 2026**.

---

consider the other grounds asserted in the Petition and Reply. *See Yee S. v. Bondi*, 806 F. Supp. 3d 894, 898 n.5 (D. Minn. Oct. 9, 2025).

## RECOMMENDATION[4]

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Kurt D.'s *Petition for a Writ of Habeas Corpus* (ECF No. 1) be **GRANTED**.

2. Respondents be ordered to release Petitioner from custody:

    A. As soon as practicable;

    B. Inside the State of Minnesota;

    C. At a safe time and place communicated in advance to counsel; and

    D. With ***all*** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

Dated: August 7, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **August 11, 2026**. Petitioner may file a response to any objections on or before **August 13, 2026**.

---

[4] The Court recommends denying Kurt's request for a prospective injunction permanently restraining Respondents from detaining him again in the future under Section 1226(c), because the legality of any such detention would turn on the circumstances and rationale for his detention at that time.